NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
UNALACHTIGO BAND OF THE             :
NANTICOKE-LENNI LENAPE              :
NATION,                             :
                                    :  Hon. Joseph H. Rodriguez
          Plaintiff,                :
                                    :  Civil Action No. 05-5710
     v.                             :
                                    :  OPINION
STATE OF NEW JERSEY, et al.,        :
                                    :
          Defendants.               :
_____ :

**RODRIGUEZ,** Senior District Judge:

This matter comes before the Court on three motions: First, Mr. James Brent Thomas, chairman of the Unalachtigo Band of the Nanticoke-Lenni Lenape Nation ("Plaintiff" or "Unalachtigo"), moves pursuant to Rule 11 of the Federal Rules of Civil Procedure for sanctions against the Stockbridge-Munsee Community, Band of Mohican Indians ("Stockbridge") and the New Jersey Land Title Association ("NJLTA") [80]. Second, Mr. Thomas moves to relax the Local Civil Rules so as to reduce the amount of time in which the Stockbridge and NJLTA[1] may respond to his motion for sanctions [81]. Third, the Stockbridge cross-moves under Rule 11 for sanctions against Mr. Thomas [98].

---

1    Throughout the remainder of this Opinion, the Court will occasionally refer to the Stockbridge and the NJLTA collectively as the "Interveners."

For the reasons discussed below, the Court will order Mr. Thomas' motions [80, 81] stricken from the record. It will also deny the Stockbridge's cross-motion [98].

## I.  BACKGROUND FACTS AND PROCEDURAL HISTORY

The Unalachtigo is an Indian tribe. However, it is neither state nor federally recognized as such. Instead, it is organized as a New Jersey non-profit corporation.

Plaintiff claims to be the successor in interest to an Indian tribe for which the Colony of New Jersey set aside a tract of land in Burlington County in 1758. This land came to be known as the Brotherton Reservation.

The Unalachtigo claims the State unlawfully sold the Brotherton Reservation in 1801. Thus, in December 2005, Plaintiff filed a Complaint in this Court, essentially seeking to reclaim the reservation and naming as defendants several agencies and officials in Burlington County (collectively "Burlington County Defendants").

The Unalachtigo was not represented by counsel when it filed its Complaint. Thus, the suit was actually initiated by Mr. Thomas, who thereafter filed two motions to have Plaintiff's counsel appointed by the Court.

Mr. Thomas' requests for appointment of counsel were denied by Judge Donio. (See Order, 1/27/06.) More specifically, Judge Donio refused to entertain these motions because Mr. Thomas was not a licensed attorney and therefore could not file them on Plaintiff's behalf. (Id., p. 3.) Instead, Judge Donio directed Plaintiff to hire counsel within thirty days or else face dismissal of its Complaint. (Id.)

The Burlington County Defendants then filed an Answer to Plaintiff's Complaint on February 10, 2006. Around the same general time, Plaintiff hired the law firm of Reed Smith, LLP, which entered an appearance on February 27, 2006.

About two months later, on April 25, 2006, the Stockbridge moved to intervene for the limited purpose of seeking the suit's dismissal. In support of its motion, the Stockbridge offered historical research supporting its contention that it, rather than the Unalachtigo, was the actual successor in interest to the Indian tribe for which the Brotherton Reservation was created. (See Stockbridge Br., 4/25/06, pp. 4-16.) Thus, the Stockbridge argued that it was a necessary and indispensable party in whose absence the suit could not proceed. (Id., pp. 20-26.) Because it declined to waive its sovereign immunity from suit, the action would therefore have to be dismissed. (Id., pp. 26-27.)

The Court granted the Stockbridge's motion to intervene over Plaintiff's objection. It reserved, however, on the motion to dismiss, which remains under consideration.

Meanwhile, Plaintiff's counsel set about reshaping the Unalachtigo's suit. On May 1, 2006, Plaintiff filed a stipulation of dismissal as to the Burlington County Defendants. About a month later, on June 8, 2006, it filed an Amended Complaint in which it named as defendants the State of New Jersey and Governor Jon S. Corzine

(collectively "State Defendants").[2] (Pl. Am. Compl. ¶¶ 2-3.) The Amended Complaint also confirmed that the Unalachtigo was the sole plaintiff in this action.[3] (See id. ¶ 1.)

During this period, Mr. Thomas and Plaintiff's counsel, Mr. Thomas Burns, experienced some difficulty in their relationship. This stemmed from Mr. Thomas' apparent insistence that Mr. Burns assert a position regarding the Stockbridge's sovereign immunity for which there was no factual support. (Hearing Tr., 2/14/07, 4:18-25.) When Mr. Burns refused to do so for ethical reasons, Mr. Thomas informed him that Plaintiff would seek a new attorney. (Id., 4:25-5:4.) Thus, on December 4, 2006, Mr. Burns wrote the Court a letter in which he explained that Reed Smith had been discharged as the Unalachtigo's counsel. Mr. Burns followed this letter up on January 24, 2007 with a motion for leave to withdraw.

Thereafter, on February 1, 2007, Mr. Thomas filed a motion to appear pro se or pro hac vice. The Court entertained oral argument on this motion, as well as Reed Smith's motion to withdraw, on February 14, 2007. Following the conclusion of this hearing, the Court denied both motions. (See Order, 2/14/07.)

---

2      The State Defendants responded by moving to dismiss the Amended Complaint on several grounds including sovereign immunity, the doctrine of laches, and state statutes of limitations. (See State Defendants Br., 7/19/06.) However, this motion was never adjudicated upon because the State Defendants withdrew it without prejudice pending resolution of which entity–the Stockbridge or the Unalachtigo–was the legitimate successor in interest to the tribe for which the Brotherton Reservation was created. (See Order, 3/5/07.)

3      By contrast, the original Complaint identified Mr. Thomas as the Unalachtigo's co-plaintiff, though it failed to allege any individual claims on his behalf. (See generally Pl. Compl.)

Additionally, the Court indicated at the February 14, 2007 hearing that it wished to adjudicate on the issue of which tribe–the Stockbridge or the Unalachtigo–was the legitimate successor to the Brotherton Reservation Indians.  Thus, the Court asked Mr. Thomas if it had sufficient submissions in support of Plaintiff's position, to which he responded in the affirmative.  (Hearing Tr., 2/14/07, 31:2-13.)  The Court also offered the Stockbridge the opportunity to submit additional historical documentation in support of its position.  The Stockbridge ultimately declined to do so, preferring instead to rely on its previous submissions.  (See Stockbridge Ltr. to the Court, 3/2/07.)

A week later, the Court entertained oral argument from the NJLTA on its motion to intervene as amicus curiae, which it had filed a few months earlier.  During this hearing, the Court directed the NJLTA to brief the tribal successorship issue and subsequently granted it amicus curiae status.  The NJLTA then filed two briefs and concluded, among other things, that if any tribe succeeded to the Brotherton Reservation, it was the Stockbridge.  (See generally NJLTA Brs., 3/21/07, 5/22/07.)

On September 24, 2007, Mr. Thomas filed a motion for sanctions against the Interveners for what he believes was an inadequate factual investigation of the successorship issue.  He also moved to relax the Local Civil Rules so as to reduce the amount of time in which they could respond to his motion for sanctions.

The NJLTA responded to Mr. Thomas' motions on September 27, 2007.  Two weeks later, on October 12, 2007, the Stockbridge filed its opposition to Mr. Thomas' motions, as well as its own cross-motion for sanctions against Mr. Thomas.

5

## II.  DISCUSSION

### A.  Mr. Thomas' Motions

Mr. Thomas' arguments in support of sanctions appear to be nothing more than hollow accusations and conclusory statements that lack relevant legal support and specific factual analysis.  As such, the Court need not explain these arguments in great detail.  Instead, it suffices to say that Mr. Thomas takes issue with the quality of the Interveners' factual investigation regarding the successorship issue.  He adds that the facts and law so plainly favor the Unalachtigo that any opposition to its suit must be considered frivolous.  (Thomas Ltr. Br.. 9/24/07, p. 5.)  He then abandons any semblance of a Rule 11 analysis and attempts to assert new, unsupported claims against the Interveners for negligence and tortious interference.  (See id., pp. 10-11.)  After discussing the frailty of his mental and emotional state, Mr. Thomas declares that "[u]nless this matter is resolve [sic] immediately, I shutter [sic] to think what my future options may be[.]"  (Id., p. 14.)  He then concludes by listing a variety of compensatory and punitive damages to which he believes he and the Unalachtigo are entitled.  (Id., pp. 14-15.)

The Interveners oppose Mr. Thomas' motion for sanctions primarily by arguing against its merits.  To this end, they outline the detailed nature of their factual research, which they contend was reasonable under the circumstances.

The Court agrees that the Interveners' research was extensive and far from sanctionable.  Nonetheless, it will dispose of Mr. Thomas' motions for a different, more

fundamental, reason: their filing constitutes the unauthorized practice of law, the appropriate response to which is to strike them from the record.

The rules governing the practice of law are clear that non-lawyers are not permitted to represent parties in federal court. See United States v. Wilhelm, 570 F.2d 461, 465 (3d Cir. 1978). Moreover, while natural persons who are parties to federal actions are entitled to "plead and conduct their own cases personally," 28 U.S.C. § 1654, artificial entities such as corporations may not. Instead, "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." Rowland v. Cal. Men's Colony, 506 U.S. 194, 201-02 (1993); see also Van De Berg v. Comm'r, 175 Fed. Appx. 539, 541 (3d Cir. 2006) ("'As a general matter, a corporation . . . can only appear in court through an attorney and not a non-attorney corporate officer appearing pro se.'" (quoting Harrison v. Wahatoyas, L.L.C., 253 F.3d 552, 556 (10th Cir. 2001))). Thus, a non-lawyer's attempt to represent a corporation in federal court constitutes the unauthorized practice of law.

Based on these principles, the Court concludes that Mr. Thomas engaged in the unauthorized practice of law when he filed his motions for sanctions and for relaxation of the Local Civil Rules. The Unalachtigo is organized as a New Jersey non-profit corporation. Under Rowland, it must be represented by licensed counsel. Nonetheless, Mr. Thomas, who is not an attorney, attempted to represent it by filing these motions on its behalf.

It is true that the original Complaint identified Mr. Thomas as a plaintiff. However, on June 8, 2006, the Unalachtigo filed an Amended Complaint in which it was identified as the sole plaintiff in this action. (See Pl. Am. Compl., ¶ 1.) Thus, Mr. Thomas is not a party to this case and therefore has no right to act as a pro se litigant.

Mr. Thomas believes a different result is warranted in light of Fraass Survival Systems, Inc. v. Absentee Shawnee Economic Development Authority, 817 F. Supp. 7 (S.D.N.Y. 1993). In Fraass, the defendant, an agency of the Absentee Shawnee tribe, sought leave to appear pro se. Id. at 8. The plaintiff opposed the motion and argued that Indian tribes, like corporations, could not represent themselves in federal court. Id.

The Fraass court disagreed based on the unique nature of an Indian tribe. In particular, the court noted that a tribe is simultaneously a sovereign nation and a ward of the state. Id. at 10. Tribal sovereignty weighed against forcing the defendant to hire counsel against its will, particularly because tribal officials enjoyed political authority to speak on the behalf of their people. Id. Additionally, the tribe's dependency on the federal government warranted more deference to its economic hardship than would be due to a financially ailing corporation. Id. at 11. Thus, the court permitted the defendant to proceed pro se. Id.

In this case, Mr. Thomas contends that the Unalachtigo is an Indian tribe and not a non-profit corporation. (Thomas Ltr. Br., 10/30/07, p. 12.) Moreover, he explains that he is Plaintiff's principal tribal official. (Id.) Relying on Fraass, he reasons that he should therefore be permitted to appear pro se on Plaintiff's behalf. The Court disagrees.

8

The Fraass court's decision to allow the defendant to appear pro se was based on the unique circumstances of its tribal status, i.e., the combination of its sovereignty and dependency. Such circumstances, however, are a function of federal tribal recognition. See Rachael Paschal, The Imprimatur of Recognition: American Indian Tribes and the Federal Acknowledgment Process, 66 WASH. L. REV. 209, 212-13 (1991) (explaining that federal recognition entitles Indian tribes to limited sovereignty as well as special federal assistance programs). Indeed, the Absentee Shawnee, whose agency was the defendant in Fraass, is a federally recognized tribe. By contrast, the Unalachtigo is not federally recognized. Moreover, Mr. Thomas' assertion to the contrary notwithstanding, records with the New Jersey Department of State indicate that the Unalachtigo is organized as a non-profit corporation. Thus, even if the Court agreed with the Fraass decision's reasoning, it would not apply that reasoning here. Instead, the general rules related to the unauthorized practice of law govern this case. This means that only licensed counsel can lawfully file a motion–for sanctions or otherwise–on the Unalachtigo's behalf.

This conclusion should hardly come as a surprise to Mr. Thomas given the history of this case. Early in this litigation, he filed two motions in which he asked the Court to appoint counsel to represent Plaintiff. Judge Donio refused to entertain these motions, however, because he was not a licensed attorney and therefore could not file them on Plaintiff's behalf. (See Order, 1/27/06, p. 3.)

The proposition that Mr. Thomas could not represent Plaintiff was strongly reinforced several months later when he moved to appear pro se or pro hac vice. During

argument on this motion, the Court noted prior magistrate rulings–including Judge Donio's–that prohibited Mr. Thomas from appearing pro se on Plaintiff's behalf.  (See Hearing Tr., 2/14/07, 5:20-23.)  Moreover, the Court repeatedly expressed its intention to follow those rulings by denying Mr. Thomas' motion.  (See id., 9:19-10:4, 10:23-24, 37:15-16.)  The Court ultimately did just that in an Order dated February 14, 2007.  This Order, combined with the previous magistrate rulings, should have made it apparent that Mr. Thomas was, and is, not permitted to appear as Plaintiff's pro se counsel.[4]

Based on the foregoing analysis, the Court concludes that Mr. Thomas engaged in the unauthorized practice of law when he filed the instant motions for sanctions and for relaxation of the Local Civil Rules.  The Court must therefore order them stricken from the record.  See Hernandez v. Cullison, No. 05-3038, 2006 U.S. Dist. LEXIS 45505, *22 (D.N.J. June 26, 2006) (striking a plaintiff's brief in opposition to summary judgment because it was prepared by a non-lawyer); see also Fed. R. Civ. P. 11(a) (requiring all papers filed with the court to be stricken if they are not signed by either the attorney of record or, if the party is unrepresented, by the party).

---

[4]   Mr. Thomas seemingly believes that he "has been allowed by this Honorable Court to appear pro se though counsel."  (Thomas Ltr. Br., 10/30/07, p. 12.)  Genuine though Mr. Thomas' belief may be, this statement is simply incorrect; the record clearly demonstrates that the Court has never authorized him to appear pro se in this case.  He does not point to, and the Court could not locate, anything in the record that indicates otherwise.

B.  The Stockbridge's Cross-Motion

In addition to opposing Mr. Thomas' motions, the Stockbridge cross-moves for sanctions against him.[5]  In support of its cross-motion, it argues that Mr. Thomas' motion for sanctions so lacks factual and legal support that no reasonable person could have believed it was presented for a proper purpose.  It adds that the vexatious nature of his motion is further evidenced by his "own choice of the strident, accusatory and aggressive language permeating his filing." (Stockbridge Br., 10/12/07, p. 24.)  Finally, the Stockbridge argues that sanctions are warranted because Mr. Thomas filed the motions in contravention of several judicial orders denying him permission to appear pro se.  While the Court agrees that Mr. Thomas' motions appear to be frivolous and vexatious, it concludes that he should not be sanctioned at this time.

Rule 11 of the Federal Rules of Civil Procedure is intended to discourage the filing of frivolous, unsupported, or unreasonable claims by "impos[ing] on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" Lieb v. Topstone Indus. Inc., 788 F.2d 151, 157 (3d Cir. 1986).  The Rule requires attorneys or unrepresented parties to certify that (1) any pleading, written motion, or other paper is not presented for any improper purpose such as to harass or increase the costs of litigation, (2) the legal contentions "are warranted by existing law or by a non-frivolous argument for the extension, modification,

---

5   The Stockbridge is careful to note that its cross-motion for sanctions is directed against Mr. Thomas only, and not against the Unalachtigo or its counsel at Reed Smith.  (Miller Cert., 10/12/07, ¶ 41.)

11

or reversal of existing law," and (3) the factual contentions, or denials thereof, have evidentiary support.  Fed. R. Civ. P. 11(b).  If the Court determines that Rule 11 has been violated, it may sanction the responsible attorneys, law firms, or parties.  Fed. R. Civ. P. 11(c).  Pro se litigants are not immune from such sanctions.  See Unanue Casal v. Unanue Casal, 132 F.R.D. 146, 152 (D.N.J. 1989).

The Third Circuit has stated that "the legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances."  Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 289 (3d Cir. 1991).  Reasonableness in this context requires "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well grounded in law and fact."  Id.

This standard is relaxed somewhat when sanctions are sought against a pro se plaintiff.[6]  In such a case, the movant must "demonstrate, under all the circumstances, that no reasonable person could have believed that the pleading was presented for a proper purpose and that the claims are warranted by existing law or a non-frivolous argument to extend, modify or reverse existing law."  Talley v. City of Atlantic City, No. 04-1146, 2007 U.S. Dist. LEXIS 49486, *14 (D.N.J. July 10, 2007).

---

6   Mr. Thomas is obviously not a pro se plaintiff in this case.  See generally supra section II(A).  Nonetheless, the relaxed Rule 11 standard for pro se litigants should apply to Mr. Thomas because he lacks any legal training.  See Talley v. City of Atlantic City, No. 04-1146, 2007 U.S. Dist. LEXIS 49486, *12 (D.N.J. July 10, 2007) ("It is recognized that '[a] layman cannot be expected to realize as quickly as a lawyer would that a legal position has no possible merit, and it would be as cruel as it would be pointless to hold laymen who cannot afford a lawyer . . . to a standard of care that they cannot attain even with their best efforts.'" (quoting Bacon v. AFSCME Council, 795 F.2d 33, 34-35 (7th Cir. 1986))).

In this case, the Stockbridge has made a strong argument in favor of sanctioning Mr. Thomas. Simply put, his Rule 11 motion is devoid of any relevant legal or factual support for the accusations made therein. For example, he claims that the Interveners have withheld material facts and legal authority from the Court, yet he fails to identify any particular fact or controlling case or statute that was omitted. Likewise, he charges that the Stockbridge advanced "frivolous claims that are unsupportable in fact and law[.]" He does not, however, identify which claims are frivolous or explain the legal basis for this conclusion. Given his motion's unsupported nature, the Court doubts that anyone could reasonably believe it was presented for a proper purpose. See Talley, 2007 U.S. Dist. LEXIS 49486, at *14-15 (imposing sanctions on a pro se litigant in part because he failed to identify any facts that supported a motion he filed, which suggested that he filed it for the improper purposes of harassing his adversary and prolonging the litigation).

Moreover, the Court agrees with the Stockbridge that the vexatious nature of Mr. Thomas' Rule 11 motion is amplified by the unjustifiably aggressive language peppered throughout it. For example, he charges, without support, that the Stockbridge's litigation strategy "was patently designed to intentionally and unjustifiably interfere" with the Unalachtigo's prospective economic opportunities. (Thomas Ltr. Br., 9/24/07, p. 11.) He likewise asserts, again without support, that the Interveners' "actions or inaction . . . were patently designed with actual malice or reckless disregard" toward Plaintiff's alleged treaty rights. (Id., p. 13.) Perhaps most troubling, he concludes his argument by declaring that "the time for civil niceties has come to an end. . . . [I]ts [sic] time for [the

13

Interveners] to pay for their arrogance." (Id., p. 14.)  Absent legitimate factual support, such strident and overtly hostile language strongly suggests that Mr. Thomas' motion for sanctions was presented for an improper purpose such as to harass the Interveners.

Having said that, the Court is reluctant to impose sanctions on a layman who is obviously unfamiliar with the principles reflected in Rule 11.  Therefore, it will not sanction Mr. Thomas at this time for filing what amounts to a frivolous and vexatious motion for sanctions.  Likewise, the Court will not sanction him for filing his motions in violation of previous orders that prohibited him from appearing pro se on Plaintiff's behalf.  Mr. Thomas seems to believe he was permitted to act in this capacity, see supra footnote 5, and the Court will not to penalize him for making this mistake.  Going forward, however, if he files any motions–frivolous or otherwise–or in any other way attempts to act as Plaintiff's pro se counsel, the Court will entertain a renewed motion for sanctions against him by any affected party.

### III.  CONCLUSION

For the foregoing reasons, the Court will order Mr. Thomas' motions [80, 81] stricken from the record.  Additionally, the Court will deny the Stockbridge's cross-motion for sanctions [98].  An appropriate Order will be entered with this Opinion.

  /s/ Joseph H. Rodriguez  
JOSEPH H. RODRIGUEZ  
United States District Judge

Dated: December 17, 2007